KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 07CR3344-IEG |
| Plaintiff, | ) |
| v. | ) **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| ALBERTO ISAAC-RAMIREZ, | ) **(1) TO COMPEL DISCOVERY;** |
| Defendant. | ) **(2) TO DISMISS INDICTMENT DUE TO GRAND JURY INSTRUCTIONS;** |
| | ) **(3) TO DISMISS INDICTMENT FOR FAILURE TO ALLEGE ELEMENTS;** |
| | ) **(4) TO STRIKE SURPLUSAGE; AND** |
| | ) **(5) FOR LEAVE TO FILE FURTHER MOTIONS** |
| | ) **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| | ) Date: January 22, 2007 |
| | ) Time: 2:00 p.m. |
| | ) Court: The Hon. Irma E. Gonzalez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to the above-captioned motions. Said Response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//

//

# I

## STATEMENT OF THE CASE

On December 12, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Alberto Isaac-Ramirez ("Defendant") with Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326. On December 18, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

### A. Defendant's Apprehension

On November 19, 2007, at approximately 6:05 p.m., a seismic intrusion device alerted in an area known as Gravel Pit, which is about 1.5 miles west of the San Ysidro Port of Entry. Border Patrol Agent Juarez responded to the scene. An infrared scope operator noticed a heat signature near the area and guided Agent Juarez to it. After a brief search, Agent Juarez found an individual, later identified as Defendant Isaac-Ramirez, hiding in the brush, approximately 200 yards north of the international border. Agent Juarez identified himself as a Border Patrol Agent and conducted an immigration interview. Defendant admitted he was a Mexican citizen and that he did not have documents allowing him to be in the United States legally.

At the station, Defendant's biographical information, fingerprints and photograph were entered into the IDENT and IAFIS computer databases, which revealed Defendant's criminal and immigration history. On November 19, 2007, at about 9:45 p.m., Agent Juarez advised Defendant of his Miranda rights. Defendant elected to invoke his right to counsel. Defendant was then advised of his right to speak to the Mexican consular office and declined.

### B. Defendant's Criminal and Immigration History

Defendant's criminal history dates back to at least 1990, when he was convicted of misdemeanor second degree burglary and sentenced to 93 days in custody. On June 7, 1993, Defendant was convicted of possessing a controlled substance with special circumstances (firearm). Defendant was initially sentenced to 270 days in custody, which was increased to 3 years after his probation was revoked. Since 1993, Defendant has been incurred four misdemeanor convictions involving the possession or use of a

controlled substance, most recently on May 22, 2006. In 2002, Defendant sustained two convictions for being a felon in possession of a firearm (one misdemeanor and one felony). The Government believes Defendant is a Criminal History Category VI.

Defendant appeared before an Immigration Judge for a deportation hearing on October 16, 2007 Defendant was physically removed from the United States through the San Ysidro, California Port of Entry on November 15, 2007. Defendant had been previously deported by an immigration judge on April 26, 1995 and July 15, 2002.

### III

### DEFENDANT'S MOTIONS

**A.  MOTION TO COMPEL DISCOVERY**

**1.    Discovery in this Matter is Current**

The Government has and will continue to fully comply with its discovery obligations. To date, the Government has provided Defendant with 74 pages of discovery and one DVD, including the relevant arrest reports, A-file documents, rapsheet and conviction documents. The Government is prepared to schedule a viewing of Defendant's A-File. The Government will provide counsel with the audiotape from Defendant's hearing before an Immigration Judge as soon as the tape is received and a duplicate has been made. Furthermore, the Government will request that the arresting agency preserve any evidence the Government intends to introduce in its case-in-chief or that may be material to the defense.

**2.    The Government Has and Will Continue to Comply With Its Discovery Obligations**

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. As set forth above, the Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its

1  witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29
2  (9th Cir. 1991) will also be conducted.

3  The United States will provide a list of witnesses at the time the Government's Trial
4  Memorandum is filed. The Government objects, however, to Defendant's request that the United
5  States provide a list of every witness to the crimes charged who will not be called as a United States
6  witness. [Def's Memorandum at 3.] "There is no statutory basis for granting such broad requests,"
7  and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s]
8  the parameters of Rule 16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C.
9  2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). In addition, the grand
10 jury transcript of any person who will testify at trial will be produced. The United States will
11 produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may
12 be material to the preparation of the defense.

13 The United States has provided information within its possession or control pertaining to the
14 prior criminal history of Defendant. If the Government intends to offer any evidence under
15 Rules 404(b) or 609 of the Federal Rules of Evidence, it will provide timely notice to Defendant.

16 To the extent Defendant requests other specific documents or types of documents, the
17 Government will continue to disclose any and all discovery required by the relevant discovery rules.
18 Accordingly, the Government respectfully requests that no orders compelling specific discovery by
19 the United States be made at this time.

**B.  THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED** [1/]

**1.  Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc)

---

[1/] As this Court is aware, Federal Defenders of San Diego, Inc. has filed this same motion in almost every case indicted by the January 2007 grand jury. In United States v. Jimenez-Bermudez, 07CR1372-JAH, Judge Houston issued a written opinion denying this motion. In United States v. Martinez-Covarrubias, 07CR0491-BTM, Judge Moskowitz also issued a written opinion denying this motion.

generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. "). [<u>Id.</u>] <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. [Def's Memorandum p. 15 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.  That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.  It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.  The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

### 2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

>    But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.
>
>    And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.

Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" [Def's Memorandum p. 4.]  In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means.  [Id. at p. 15.]  Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution."  [Id. at 4-5.]  Defendant further contends that Judge Burns reinforced this flat prohibition when he "referred to an instance in the grand juror selection process in which he excused three potential jurors."  [Id. at 5.]  This argument combines two of the holdings in Navarro-Vargas in the hope they will blend into one.  They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from

1  declining to indict because the grand jurors disagree with a proposed prosecution, because they do
2  not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the
3  prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the
4  term "should" was germane.[2/] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").
5  This other instruction bestows discretion on the grand jury not to indict.[3/] In finding this instruction
6  constitutional, the court stated in words that ring true here, "It is the grand jury's position in the
7  constitutional scheme that gives it its independence, not any instructions that a court might offer."
8  408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as
9  follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

---

[2/] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[3/] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

Partial Transcript pp. 3-4.

>Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
>To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told that they had the discretion not to return an indictment per Navarro-Vargas. If a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment by this Court exercising its supervisory powers.

Although Defendant argues that Judge Burns used the excusing of the prospective grand jurors as a method of coercing the impaneled grand jurors to return indictments every case where there is probable cause, [Def's Memorandum at 7], the Partial Transcript reveals that did not happen. When instructing the impaneled grand jurors Judge Burns said:

>You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
>But it is not for you to judge the wisdom of the criminal laws enacted by congress; that is whether or not there should be a federal law or should not be a federal law designating certain activity as criminal is not up to you.

[Partial Transcript, p. 8.] This passage simply does not evoke the "you must indict no matter what" scenario proposed by Defendant. Judge Burns was simply reminding the impaneled grand jurors of their obligation not to judge the wisdom of the criminal laws, which all the cases allow him to do. Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burn's reference back

to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns stated:

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[4]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, Judge Burns also "assure[d] the grand jurors that prosecutors would

---

[4] Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

1  present to them evidence that tended to undercut probable cause." [Def's Memorandum at 13.]
2  Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they
3  'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be
4  honest, and . . . they'll act in good faith in all matters presented to you.'" [Id. at 14.]  From this lash-
5  up Defendant contends that the instructions discourage investigation by creating a presumption that
6  in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists.
7  [Id. at 14-15.]  Defendant then concludes that "[a] grand jury so badly misguided is no grand jury at
8  all under the Fifth Amendment. [Id. at 15.]

9  Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence
10  that cuts against what they may be asking you to do if they're aware of that evidence," is directly
11  contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no
12  obligation to consider all 'substantial exculpatory' evidence, we do not understand how the
13  prosecutor can be said to have a binding obligation to present it." (emphasis added)).  However, the
14  analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the
15  United States Attorney's Office, and made appearances in front of the federal grand jury.  As such he
16  was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[5/]
17  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[6/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of
Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede

---

[5/]The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[6/]See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.

the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233." (Emphasis added.)[7]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[8] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant. There is nothing wrong in this scenario with a grand juror inferring that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

---

[7] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[8] Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy. Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

    The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

//

C.   **THE INDICTMENT IS SUFFICIENT**

    **1.   Knowledge Need Not Be Charged in the Indictment**

Defendant argues that the Indictment is defective and must be dismissed in that it fails to allege that Defendant (1) knew he was in the United States, (2) failed to undergo inspection and admission by an immigration officer, and (3) that he voluntarily entered the United States. [Def's Memorandum at 15.]  As Defendant acknowledges, these same arguments were soundly rejected by the Ninth Circuit in United States v. Rivera-Sillas, 417 F.3d 1014 (9th Cir. 2005).  [Id. n.11, noting that Defendant is raising these issues to reserve them "for further review."]

Defendant also makes the unsupported argument that the Indictment must allege that Defendant knew he was an alien at the time he entered the United States. [Id. at 17.] As an initial matter, the Government need only prove that Defendant was in fact an alien.  See Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5B (West ed. 2003, modified January 2007).  Defendant has cited no authority for the proposition that the Government must also prove that Defendant subjectively knew his alienage.  If the Government is not required to prove Defendant's knowledge of his alienage at trial, it goes without saying that the Government need to allege Defendant's knowledge of his alienage in the charging document.

Defendant's citation to United States v. Salazar-Gonzalez, 458 F.3d 851 (9th Cir. 2006) is misplaced, as that case dealt not with the sufficiency of the indictment, but rather with the proper jury instructions. Id. at 855. Defendant's citation to United States v. Staples 511 U.S. 600 (1994) is inapposite for the same reason.  Both cases dealt with the need to establish *mens rea* to obtain a conviction, but neither case held that the *mens rea* requirement needs to be alleged in the charging document.

In Rivera-Sillas (which the court in Salazar Gonzalez cited with approval) the court held that a "found in" offense under 8 U.S.C. § 1326 is a general intent crime.  417 F.3d at 1020.  The court further found that an indictment that alleges that the defendant is "a deported alien subsequently found in the United States without permission suffices [to allege general intent].'" Id. (citations omitted).  This holding is in line with long standing precedent that a charging document is generally

1  sufficient if it sets forth in the words of the statute itself.  See Hamling v. United States, 418 U.S. 87,

2  117 (1974); United States v. Musacchio, 968 F.2d 782, 787 (9th Cir. 1991).  Accordingly,

3  Defendant's motion to dismiss for failure to allege "knowledge" in the Indictment should be denied.

4       **2.**      **There Was No Violation of the Fifth Amendment Presentment Clause**

5       Finally, Defendant argues that the Indictment is defective because it does not allege a

6  deportation date or a temporal relationship to his removal. [Def's Memorandum at 18-21.] Defendant

7  acknowledges, however, that the Indictment specifically alleges that Defendant "was removed from

8  the United States subsequent to August 29, 2002." [Id. at 18.] This date is subsequent to Defendant's

9  aggravated felony conviction and prior to his "found in" date of November 19, 2007, as charged in

10  the Indictment.  Nevertheless, Defendant argues that the Indictment violates his rights under the Fifth

11  Amendment's Presentment Clause in two ways:   (1) that there is no indication that the grand jury

12  "was charged with the legal meaning of the word 'removal'. . .as opposed to being simply removed

13  from the United States in the colloquial sense and (2) that the Government may at trial rely on a

14  deportation that was never presented to, or considered by, the grand jury. [Def's Memorandum at

15  19).  Defendant's claims lack merit.

16       The Court should deny Defendant's motion to dismiss the indictment based on his

17  speculation regarding the adequacy of the instructions to the grand jury regarding legal terms such as

18  "removal" or "deportation."  The U.S. Supreme Court has held that the Fifth Amendment right not to

19  be tried for a crime not presented to a grand jury is triggered by "only a defect so fundamental that it

20  causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment."

21  Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989).  If a grand jury should ever return

22  a true bill when there is insufficient evidence, the greatest safeguard is the petit jury and the rules

23  governing its determination of guilty.  See Sears, Roebuck & Co., 719 F.2d at 1392.

24       In United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981), cert. denied, 452 U.S. 920 (1981),

25  the Court rejected the defendant's request to dismiss the indictment on the basis of his allegation that

26  the grand jury returned a true bill without any instruction on the applicable law.  The Court stated

27  that it was "not persuaded that the Constitution imposes the additional requirement that grand jurors

28  receive legal instructions" and warned that "the giving of such instructions portends protracted

review of their adequacy and correctness." Id. at 1347.  In this case, Defendant seeks to accomplish precisely what Kenny feared.  Namely, he wishes for this Court to review the adequacy and correctness of any instruction to the grand jury.  The Court cannot do so.  This is particularly true considering that even if there was evidence—rather than merely Defendant's speculation—that the grand jury was not instructed on an element of the offense, this would not be sufficient grounds to compel the dismissal of the indictment.  See Wright, 667 F.2d at 796 (holding that erroneous grand jury instructions do not automatically invalidate an otherwise proper indictment); United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir.1989), overruled on other grounds by Midland Asphalt, 489 U.S. at 799-800 (concluding that even if the grand jury instructions were erroneous, the defendant failed to show that he was prejudiced).

In the same vein, there is no basis for Defendant to argue that the Government might try to offer evidence of a removal that differs from the one presented to the grand jury, much less that this would be improper.  Any argument that the Indictment should be dismissed on this basis is wholly undermined by the fact that the United States often presents evidence in § 1326 prosecutions of multiple deportations.  See United States v. Martinez-Rodriguez, 472 F.3d 1087, 1092 (9th Cir. Jan 3, 2007), as amended (stating that "the government was entitled to introduce evidence of both deportations to hedge the risk that the jury may reject the offered proof of one deportation, but not the other").  This longstanding practice belies Defendant's claim that the Government is limited to proving one deportation and that this particular deportation must be presented to the grand jury.

More importantly, the remedy for Defendant's alleged problem is not to dismiss the indictment. An accused's *only* cognizable interest in grand jury proceedings—and thus the *only* interest that courts can vindicate by dismissing an indictment on constitutional grounds—is the right to have a legally constituted grand jury make an informed and independent evaluation of the evidence to determine if there is probable cause to believe him guilty of a crime.  United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1392 n.7 (9th Cir. 1983) (citing United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982)).  The defendant must show that the prosecutor's conduct was "so flagrant" that it deceived the grand jury in a significant way, thereby infringing on its ability to exercise independent judgment.  See Wright, 667 F.2d at 796.  Defendant has not and cannot allege

prosecutorial misconduct. Furthermore, from the face of the Indictment, the grand jury found probable cause to believe that Defendant was removed from the United States subsequent to August 29, 2002. Such a finding is sufficient to satisfy the requirements of United States v. Covian-Sandoval, 462 F.3d 1070 (9th Cir. 2006), and must necessarily suffice to satisfy the Presentment Clause.

As previously stated, Defendant does not and cannot credibly allege that the Government attempted to mislead the grand jury. Furthermore, there is no basis to suppose that the grand jury was impaired in its ability to independently evaluate the evidence. Because Defendant has nothing but pure speculation to support his motion to dismiss, it should be denied.

### 3. The Indictment Need Not Allege a Prior Conviction

Defendant concludes by arguing that the Indictment needs to allege that Defendant suffered a prior conviction. This is an interesting argument because the Government is quite certain Defendant would strenuously object if the Government had specified Defendant's prior convictions in the charging document. In any case, Defendant again admits that his argument is foreclosed by Ninth Circuit precedent in United States v. Covian-Sandoval, 462 F.3d 1090, 1096-98 (9th Cir. 2006) (holding that the fact of a prior conviction need not be submitted to the jury) and United States v. Salazar-Lopez, 506 F.3d 748, 752 (9th Cir. 2007) (holding that "the date of the removal, *or at least the fact that [defendant] had been removed after his conviction*, should have been alleged in the indictment and proved to the jury"). Defendant's motion to dismiss on this ground should be denied.

## D. THE INDICTMENT DOES NOT CONTAIN SURPLUSAGE

Defendant's final argument, essentially, is that any portion of the Indictment that does not strictly recite what he believes are the elements of § 1326 should be stricken as surplusage. Although Defendant does not cite to Rule 7(d) of the Federal Rules of Criminal Procedure, Defendant apparently wishes for the Court to strike the Government's allegation that he was removed subsequent to August 29, 2002. The Court should decline Defendant's request.

"The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v. Ramirez, 710

1  F.2d 535, 544-55 (7th Cir. 1983)).  However, even if facts contained in an indictments allegations are
2  prejudicial, they should not be stricken if they are material and relevant to the charges.  Id.
3        The date of Defendant's removal is material and relevant to the charge under § 1326.
4  Although the Government need not take the position that United States v. Covian-Sandoval, 462
5  F.3d 1090 (9th Cir. 2006) engrafted a new element onto § 1326, the date of Defendant's deportation
6  in relation to his prior conviction is relevant for sentencing purposes under § 1326(b).  Defendant's
7  *own pleadings* maintain that Covian-Sandoval requires the Government to prove that he was
8  removed subsequent to a conviction in order to trigger the enhanced statutory maximum contained in
9  § 1326. [Def's Memorandum at 19-20 ("It is clear from Covian-Sandoval that in order to trigger the
10 enhanced statutory maximum contained in section 1326(b), the government must prove that a person
11 was removed . . . after having suffered a conviction.").]  As such, the fact that Defendant was
12 deported after the date of his aggravated felony is the "functional equivalent" of an element under §
13 1326. See United States v. Minore, 292 F.3d 1109, 1116-17 (9th Cir. 2002) (drugs case); United
14 States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (en banc) (same).  Therefore, this date
15 should be submitted to the jury.  See Buckland, 289 F.3d at 568 (holding that material facts
16 increasing sentence should be submitted to jury).  The allegation is neither prejudicial nor
17 inflammatory, and thus Defendant's request to strike the allegation should be denied.

18 **E.    MOTION FOR LEAVE TO FILE FURTHER MOTIONS**
19       The United States does not object to the granting of leave to allow Defendant to file further
20 motions, as long as the order applies equally to both parties and additional motions are based on
21 newly discovered evidence or discovery provided by the United States subsequent to the instant
22 motion at issue.
23 //
24 //
25 //
26 //
27 //
28 //

## IV

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied except where unopposed.

DATED: January 15, 2008.

>                         Respectfully Submitted,
>
>                         KAREN P. HEWITT
>                         United States Attorney
>
>
>                         /s/ ***Nicole Acton Jones***
>                         NICOLE ACTON JONES
>                         Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR3344-IEG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO ISAAC-RAMIREZ, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert Rexrode

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2008.

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney